Hornblower, C. J.
This cause comes before the court on a case made at the Salem Circuit — the premises in question, belonged to Samuel Sharp who died seized thereof. By his will, bearing date the 16th May 1805, he devised the premises, in the words following: “ I give and bequeath to my brother Edward Sharp, the Grist Mill and lands annexed, in Sharptown, and joining Dr. Hunt’s, and the Cedar Swamp on Reed’s Branch; all the above items, I give and bequeath unto him, during his natural life, and after his death to go to his male heirs, equally to be divided, after the sale of the same, by an order of the Orphans Court.” The testator afterwards made a codicil, without date, the only part of which, that has any relation to the matter in question, is in the following words. “Item, I do hereby give full and ample powers, to the Orphans Court, to make order for the sale of the Mills above described, on application of any. of the heirs for that purpose, and notice given to the other heirs, of the application to said court; and that said court are hereby duly authorized to make deed or deeds for the same, which shall be good and effectual in law and equity; and the money arising thereon, to be paid to the male heirs of Edward Sharp, equally to be divided, share and share equally.” The testator, then by a residuary clause, gives all his real estate, not disposed of by his will, to his brother Edward Sharp, in fee. Samuel Sharp, the testator, died in July 1805, without issue; whereupon his brother, Edward Sharp, the devisee for life, entered upon and took possession of the premises in question, and continued in possession thereof until the 27 December 1816, when he conveyed the same as' herein after mentioned — On the 30th April 1831, *27 and after he had conveyed the premises, he died, leaving at his deatli, the Lessor of the plaintiff Jacob Thompson Sliarp, his only surviving male issue, having had two other sons, one born beiore and the other after the death of the testator; both of whom however, had died in the life time of their father, under age, intestate, and without issue — Jacob T. Sharp was born in the life time of the testator, and before he made his will, as was also one of his brothers named Samuel, who died in the life time of Edward Sharp, his father; So that when the testator made his will, his brother Edward had two sons living namely, Samuel and the Lessor of the plaintiff.
The premises in question in this cause, are the Grist Mill and adjoining lands; the defendants not claiming any title to the “ Cedar Swamp on Reed’s Branch ” — The Lessor of the plaintiff being the only surviving male heir of his father Edward Sharp, claims title to the whole premises devised to his father for life, which includes the premises in question in this cause.
Upon this state of facts, the question arises, whether the Lessor of the plaintiff has title to the Mill and adjoining lands? If he has, it will then become necessary to examine the title set up by the defendants ; If he has not, then it is immaterial whether the defendants have title or not — -I proceed then to examine the title of the Lessor of the plaintiff under the will of his uncle — And the questions that arise upon this will, and codicil, are, 1st: Was the devise to the male heirs of Edward, a devise of the laud; Or only a gift of the money, to be raised on a sale of the land, after the death of Edward?
And 2dly. If it was a devise of the land, how were the male heirs to take; by descent, or by purchase ? And, if by purchase, did they take a vested or contingent remainder?
1. Was it a devise of the land?
It was admitted by the counsel for defendants, that where it is manifest, from the scope of the will, that a testator, intends to give the lands, they will pass, though proper and apt words for that purpose, are not used; as if the testator gives the rents and profits to the devisee, his heirs and assigns forever.
So a devise to a man, with power to give a fee, gives him by construction an estate in fee — So a devise to J. S. and that he shall sell; or to J. S. to sell — This is at least the general rule. 2 Prest, on est. 82 and seq. ,
*28 The exceptions to this rule, is, that if the will gives to the devisee an express, or specified estate, and then super-adds a power to sell; thus dividing the power from the estate, it-will not pass a fee; as if the devise be to A. for life, and then to be at his disposal, A. will have only an estate for life, because the disposing power, is a separate and distinct gift. Tomlinson v. Dighton 1 Salk. 239.
From these and a variety of other cases, this principle may be fairly deduced; that if a man by his will, gives his land to another, for no limited, certain or specified purpose, accompanied with a power to dispose of it or not as he pleases, or with power to effect a sale of it in fee, for his own benefit, either by his own immediate act, or through the agency or instrumentality of another ; Or if the words do not, in terms, import a gift of the land, specifically, but gives the devisee the disposition or control of it for his own use and benefit, exclusively and forever; in either case, the devisee takes a fee in the land.
Let us then analyze the devise in question, first as it stands in the will itself, and afterwards in connection with the codicil, and see what it amounts to; and what was the manifest intention of the testator ? The language of the testator is, as follows: “ I give the Grist Mill &c. to my brother Edward Sharp, during his natural life; and after his death, to go to his male heirs;” Now if the will had stopped here, there would have been no question about the testator’s meaning — We might have paraphrased the sentence thus: “ after the death of my brother Edward, I give the said Mill and lands, to his male heirs;” and no body would have found fault with such an exposition of .the testator’s words. All would admit, it was just what the testator intended to say, and in effect, did say — The gift of the land itself, would then have been complete. But unfortunately, the testator has added, and as a part of the same sentence, these words, “ equally to be divided between them after a sale of the same by an order of the Orphans Court.” Hence it is argued by the defendants’ counsel, that the testator did not give, or intend to give the land and Mills to the male heirs; but only to give them the proceeds thereof in money, after it should be sold by an order of the Orphans Court; and inasmuch as the Orphans Court cannot execute the power, that the devise or bequest must fail and be in *29 operative, at least at law. But this is not what the testator has said — It is only a construction put upon his words, because his words cannot be literally complied with, for his language is, that the Grist Mill and lands, shall be equally divided, after a sale by the Orphans Court. The testator says nothing in the will, about dividing the money or proceeds — they are words supplied by the ingenuity of counsel, to render the testator’s language intelligible. But since we must resort to construction and supply words, why may we not adopt such as are more consistent with the evident general intention of the testator. Yow it is manifest, the testator intended to dispose of his whole estate in the premises; and do dispose of it-, to, or for, the absolute and exclusive benefit of the male heirs of his brother. He has not made a sale of the premises by the Orphans Court, a condition, upon which such heirs were to have the estate or the proceeds thereof; nor did he on failure of such sale, devise over the property.
The testator has only pointed out a mode in which the devisees if there should be more than one, as he evidently anticipated there would be, might severally enjoy his bounty, which consisted in part, and principally of a Grist Mill, and was therefore indivisable in its nature, and could only be equally enjoyed by the devisees, by a sale and division of its proceeds.
What then, judging by the principal devise as contained in the will itself, was the intention of the testator? Obviously it was to give the premises, to the male heirs of Edward; and “ after ” a sale by the Orphans Court they were to have the money in equal shares.
That this was the intention of the testator in the will itself, is to my mind, made abundantly clear, by the codicil. I have already remarked, it was not a gift upon condition of a sale; nor was it a gift “ after ” a sale. The testator says; to go to his male heirs, equally to be divided, after a sale &c.” If he had said, “ it should go to his male heirs equally after a sale,” it would have been one thing ; but this is not his language. It is not to go to them after a sale ; but it is to go to them immediately after the death of Edward ; and be equally divided after a sale — In other words, the heirs male of Edward were to have the Mill and lands after his death ; and, after a sale, the proceeds were to be equally divided.
*30 The cocidil, as I have already intimated, is not only in accordance with, but is strongly corroborative of this view of the subject — It does not direct or command a sale — It does not speak of a sale, as a thing that is necessarily and at all events, to take place; but only as a proceeding, that may be desired by the heirs or some of them, and which under specified circumstances, he authorizes the Orphans Court to carry into effect. And then directs, in case of a sale, what in the will he left to be understood, that the money arising thereon should be equally divided among the devisees. That this is so, will appear upon a careful examination of the codicil. — The testator after vainly undertaking to give the Orphans Court full and ample power to make an order for sale, restricts them in the exercise of that power — they are not-to order a sale as a matter of course; they are to do it only, on Ih» application of one or more of the heirs ; and not even then, utiles-» notice of such applicatior^has been given to the other heirs. But why require notice tobe given to the other heirs, unless, that they might have an opportunity of objecting to such order? And why give them an opportunity of objecting, unless the Court after hearing the objections, were to exercise their judgment and discretion, in making or refusing the order ? Again, and more emphatically it may be asked, if the testator had not given the land itself to the heirs; If he had given and intended to give them no estate in the land, but only to give them the money for which it could be sold, why, should he have required any application for a sale, or any notice of such application, to the other heirs ? Did he suppose that any of'them would object to receiving his bounty, in the only.way, in which they could receive it?
Nor can any argument be drawn from that provision in the codicil, which vainly endeavors, to give the Orphans Court, power to execute deeds for the premises. He did so, in all probability, under the then reasonable expectation that one or more of the male heirs of his brother Edward, might be minors, and incapable of conveying. A fee simple may be in one person, and a power of conveyance, in another. This is always the case, where lands descend to the heir, and power is given to executors, to sell, for the payment of debts and legacies.
It is also, observable, that the authority attempted to be given to the Orphans Court, extends only to “ the millsand if by *31 those words, the land “annexed” to the mill in Sharptown, are included, the' Cedar Swamp on Reed’s branch, certainly is not. If then, the testator when he made his codicil, supposed that he had not given his lands to the heirs male, of his brother Edward, but only the proceeds thereof, on a sale to be afterwards made of them; and if he supposed that his bounty would fail, unless ho gave the Orphans Court power, to consummate his gift, then I would ask, what becomes of the Cedar Swamp ? Did he mean that his devise of the proceeds of that, to the heirs of his brother Edward, should fail ? Or did he suppose that he had given to them, the Cedar Swamp itself; and that it was only necessary, to provide for a sale of the Mill, because that was a property not susceptible of a division in any other way ? But if he had already given to them the Cedar Swamp, by the will, he had also, iu the same clause of the will, given them, the Mills and the adjoining lands. If therefore, the testator, did not by his will, give the heirs of his brother Edward, nor intend to give them the Mills and the Cedar Swamp, but only the proceeds thereof on a sale; and if he thought, that it was necessary for him by a codicil, to invest the Orphans Court with a power of sale, in order to effectuate his intent, why did he not extend that power to the Cedar Swamp and lands, as well as the Mill ? The only rational answer to these questions is, that he knew he had given the Mill, lands and Cedar Swamp to the heirs; and that he supposed it necessary to provide for the sale of the Mill alone, because that was a property, that could not be partitioned.
. I have therefore no doubt of the intent of the testator, to give all the devised premises, to the male heirs of his brother Edward. If he has not given them the lands, in so many words, he has given them, or at least h,e intended to give them (and this is a question of intent)and especially as regards the Mill, the premises now in question, an entire control over them, with power to cause them to be conveyed in fee, for their own unqualified and exclusive use and benefit. The Orphans Court was to convey; but it was to bo done only, upon the application of the devisees and for their benefit; it was to be their act: and I can see no difference in reality, whatever there may be in legal refinement, between a devise to a man with power to sell the devised premises in fee simple, whenever he pleases, and for his own use, and a devise to *32 him, with power to authorize a third person to make such sale. In either case it constructively and by an irresistible implication, invests him with the whole estate. It is true, the power given to the Orphans Court, was nugatory, but nevertheless, it shews the intention of the testator, to give the devisees, the whole estate, and the entire control of it, as plainly as it would have done if he had devised the premises to them, with power to make an attorney in fact, or to authorize some third person to make a conveyance in fee, for their benefit.
It is admitted by the counsel for the defendants, that the testator did intend to give the devisees, all his interest in the premises; but not the premises themselves. That is, he did not mean to give them the land itself, but the money for which it might be sold; he meant, they say, the land sold should first be converted into money, and that the heirs of Edward, should take it as money and not as land. This argument is based on the direction in the will and codicil, that the gift, whatever it is, should’ be equally divided between the heirs male of Edward — that it is not to go in a course of descent, but to the heirs male, as a class of persons. Hence they say, a construction which would give the land to the heirs male of Edward, would defeat the intent of the testator; for if Edward had died leaving two or more sons, and the lands had then been sold, and then one of them had died, his share of the money, would have gone to his personal representatives ; whereas if the land passed by the devise, the share of the one so dying, would go to his heirs-at-law. This is true; and if it was the intention of the testator, to give the money, and not the lands, the construction contended for by the plaintiff, would defeat that intention. But this is begging the point in dispute, and coming back after all, to the question of intention; that is, whether the testator intended to give, the land, or the money ?
2. If it was a devise of the land, how were the male heirs to take, by descent, or by purchase?
But it is unnecessary to discuss this point, since it is conceded, although it is not distinctly set forth in the state of the case, that the lessor of the plaintiff, was not only, the only surviving male heir of his father Edward Sharp, but the sole heir-at-law of his brothers Samuel and Edward; So that whether the sons of Edward Sharp took vested or contingent remainders, the result *33 would be the same — If the estate passed by way of descent, then the lessor of the plaintiff took the whole, as the male heir of his father, the devisee for life; and if the sons of Edward, took vested remainders, then the lessor of the plaintiff took one third, under the will of his uncle Samuel Sharp, and inherits the residue, as sole heir at law of his deceased brothers. I am therefore of opinion, that the lessor of the plaintiff is entitled to recover the whole premises; unless the defendants have shewn a better title. Whether they have done so, remains to be seen.
In September 1802, Gertrude Parker, executrix &c. recovered a judgment in this Court for $8000, and upwards, against Samuel Sharp, the testator, Edward Sharp, and Samuel Potts. On this judgment, ail execution was issued to the sheriff of Sussex, returnable to November term 1802. In September term 1807, and of course after the death of Samuel Sharp, a test. fi. fa. was issued on the said judgment, into the county of Salem, (in which, the premises in question are situated) against the goods and lands of all three of the defendants: under this execution the sheriff of Salem, levied upon and sold among other lands, the premises in question. Edward Sharp himself became the purchaser, and received the sheriff’s deed. — On the 27th December 1816, Edward Sharp conveyed the premises, in fee, to Wm. Cooper, who thereupon mortgaged the same premises to Edward Sharp, to secure to him the purchase money or a part of it — Edward Sharp afterwards assigned that mortgage to Jacob' Ridgway, who obtained a decree in Chancery, for the sale of the mortgaged premises, and became himself the purchaser thereof at sheriff’s sale ; and then conveyed in fee, to the defendants in this suit.
There are various, and in my opinion, some fatal objections to the regularity of the proceedings, just referred to. The original fi. fa. was against two only of the three defendants; namely, Edward Sharp and Samuel Sharp — Yet the testatum is against all three of them, notwithstanding Samuel Sharp was then dead. Nor is there any evidence, on the face of the sheriff’s deed, or elsewhere, that the sheriff, levied, advertised and sold, in the manner directed by law: Nor was there any legal endorsement-oil the testatum, of the amount due and to be raised thereon.
But if the view I have taken of the plaintiff’s title, is correct, it is unnecessary to examine these objections in detail. Had the *34 proceedings been regular, the sheriff could have sold nothing but Edward Sharp’s life estate in the premises; and even admitting that ho could be the purchaser of his own estate, (which I very much doubt; “nemo potest esse agens et patiens”) Yet he acquired no greater estate, than he had before; and consequently, his subsequent deed to Cooper, could convey no more.
I am therefore of opinion, that the. defendants have shewn no title; and judgment must be entered for the plaintiff, for the whole of the premises in question.
Fokd, J. Jacob T. Sharp the lessor and real plaintiff in this suit, claims the premises in controversy, consisting of a grist mill and lands annexed, which formerly belonged in fee simple to Samuel Sharp now deceased, alleging that Samuel Sharp devised the premises to him by his last will and testament. Against this claim, the defendants set up two objections, a statement of which will present all the matters in difference.
The first objection is, that Samuel Sharp, the testator, had no right or title to the premises, at the time of his death; by reason of a judgment against him in his life-time, of record ; and of an execution thereon; under which, the sheriff sold and conveyed the premises to another person, in whom the title became vested; and that Ihe devise of them in the will of Samuel Sharp, was a nullity. The case establishes the following facts; that a judgment for a large sum of money was obtained against him in his life-time; that after he had been dead about two years, an execution was sued out and levied upon all his right in the premises, and that the sheriff sold and conveyed that right to a purchaser, under whom the defendant now holds by regular conveyances. This proceeding against a person, after he was dead and gone, is without principle, precedent or example. The moment Samuel Sharp died, his right and title to all worldly possessions departed from him, and vested in his executors, heirs or devisees; and the proceedings on the judgment, if it was a valid one, ought to have been carried on against them, or some of them, in order to effect or take away their title. An execution against a person, sued out two years after his death, is an execution against nobody; therefore Samuel Sharp might legally devise by his last will and testament, whatever interest he had in the premises at the time of his death, and the same would pass to his devisee, subject how *35 ever to encumbrances by mortgage, judgment or otherwise.
The second objection is, that the testator devised the grist mill and lands annexed, to Edward Sharp for life; but that after his death, they are not devised to the plaintiff or to any body else; they are ordered by the will to be sold and the money arising thereon to be paid to the male heirs of Edward Sharp; and though the plaintiff is the only male heir of Edward Sharp; his title is to the money after a sale, and not to the land, which descends to the heirs-at-law of the testator until it is sold. It is alleged on the other hand, that according to the will and codicil, the property itself is to go to the male heirs, but with this provision added to it, that any one of them might apply to the Orphans Court to have the estate sold, and then the court should have power to order it to be sold, and the money arising thereon to be equally divided among them. The will runs as follows; ‘‘ I give and bequeath to my brother Edward Sharp, the grist mill and lands annexed in Sharptown and joining Doctor Hunt’s, aud the Cedar Swamp on Reed’s branch; all the above items I give to him during his natural life, and after his death to go to ins male heirs, equally to be divided, after a sale of the same by an order of the Orphans Court.” He gives the grist mill, the lands annexed and the Cedar Swamp, to Edward Sharp for life, and after his death to his male heirs. The subjects of the gift are accurately described and the limitation of them immediately follows, first, to Edward Sharp for life, and after his death, secondly, to his male heirs. Money, or the value of the property to Edward or his heirs is not mentioned; it stands a plain devise of the grist mill, the lands annexed and the Cedar Swamp; each specified as sufficiently as it could have been done by any conveyancer or the most learned counsellor. But the next clause creates an insuperable difficulty, which no construction can solve. He gives the same to the male heirs; but he adds in the next clause, “ after a sale of the same by an order of the Orphans Court.” IF the same are sold by an order oF the Orphans Court they must go to the purchaser oF them at such sale; and after such sale, how can they go to the male heirs to be divided ? This is a riddle which legal sagacity could never have unfolded. But the testator before his death, discovered the absurdity, fortunately, himself, and made a codicil to the will, shewing in what *36 event, and on what previous condition, such sale should be made by an order of the Orphans Court. It cuts the knot of the riddle, and the absurdity disappears. The codicil is in the following words: “I give full and ample powers to the Orphans Court, to make order for the sale of the mills above described, On application of any of the heirs for that purpose, and notice given to the other heirs of the application to said court, and that said court are hereby authorized to make deed or deeds for the same, which shall be good and sufficient in law and equity; and the money arising thereon to be paid to the male heirs of Edward Sharp, equally to be divided, share and share equally.”
The devise of the property first to the male heirs, and the subsequent sale ordered of the same, so inconsistent with each other in the will, induced the testator to take up the subject of the sale again, and to give in a codicil, clearer directions as to the ground on which a sale might be ordered; also over what branch of the ■property it might be exercised; and as to the disposition which should be made of the proceeds: all which he had omitted to mention in the will; and these final directions, are evidently the testator’s last will concerning the sale, made after more thought and upon more deliberate consideration. His intention evidently is, that the power of sale should not extend to all the property; that it should not touch the lands annexed to the mill; nor the Cedar swamp; but that it should be limited “ to make an order for the sale of the mills above described;” these are his words. The other property admitted of division without any expense, by deeds of partition among themselves; but the division of a mill is impracticable by any means except a sale and division of the proceeds; and the testator would entrust such sale (if it was to be made) and the division of the money, to none but the Orphans Court. But the will ordered the property, on the death of Edward Sharp, “ to go to his heirs male ” expressly, and as the subsequent power of sale extends to the mills only, the other parís vested in the male heirs, irrevocably on the death of Edward Sharp.
As the devise stands in the will, it gives, without exception, the whole property to Edward Sharp for life, and after his death “ to go to his male heirs;” whereby the whole vested in them, immediately on his death. But by a subsequent clause in the will, *37 more fully explained in the codicil) the mills were subject to be divested, in case of a sale of them by the Orphans Court, to any body else. In the meantime they remain vested in the heirs, along with the other property, by the express words of the devise just cited. Now no sale has ever been made, whereby to divest iieirs of their title to the mills, because the condition has never been performed, on which the power of the Orphans Court to sell, entirely depended. The testator does not give the court power to sell, absolutely, against the will of the male heirs, nor did he mean to do so; he gives them power to sell “ on the application of any of the heirsfor that purpose; ” it need not be made by all the heirs, nor by a majority of them; it can be made by any without the consent of the rest; but until it shall be made by one of them, at-the least, the Orphans Court has not a shadow of power to divest the heirs of their title. A Justice of Supreme Court, or Judges of the Common Pleas, might order property to be sold for partition, without application from any of the owners, just as well as the Orphans Court could do so, in this case. The will gives power to sell just as the statute does, only on application. No application for the exercise of the authority, has yet, been made to the Orphans Court, and probably never will he made. The testator drew this will, under an evident impression that his brother Edward might have several male heirs; whereas the plaintiff' was the only one and did not ask for partition, because there was no other owner to divide with, and it coul,d not be done for that reason; but that was not the only one. ' What lawful jurisdiction has the Orphans Court, as a court of record, in its judicial character, to make a deed for the conveyance of private property ? Such an official deed was never yet seen, or even heard of. The legislature confers on them no such jurisdiction, nor can private consent give it. The idea of the testator, was utterly fallacious, that he could constitute a court of record, trustees of his private will; he could as well appoint one of the public courts of the state to be his executors, and direct the duties they should perform, and how the court should proceed in them. We have no concern however, with this matter, for there is only one heir, and the title vested in him, at his father’s death, by the words of the devise. On the other hand, the defendants shew no right or title whatever. I am therefore of *38 opinion, that judgment must be rendered for the plaintiff.
Ryerson, J. I have some doubt whether the devise in nuestion, is to be considered a devise of the land itself, to the heirs of Edward Sharp; or only of a power to sell and distribute the proceeds. As to the validity of the execution, sheriff’s sale, and deed, I see no reason to doubt the correctness of the result to which the court has arrived.

Judgment for the plaintiff.

Cited in Den, Arrowsmith, v. Taylor, 1 Harr. 534; Den, Elle v. Young, 3 Zab. 481; Den, Elle v. Young, 4 Zab. 781-783; Downey v. Borden, 7 Vr. 467